**Donald R. ROBERSON, Jr., Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES; Vicki Johnson; Alpha Micro Systems; Nena Dols; and Does 1 through 20, Inclusive, Defendants.**

**No. CV 86–2105 PAR (JRX).**

United States District Court, C.D. California.

May 27, 1987.

Cornelius P. Bahan, Santa Ana, Cal., for plaintiff.

George T. McDonnell, Marvin E. Garrett, Allen, Matkins, Leck, Gamble & Mallory, Los Angeles, Cal., for Alpha Micro Systems.

Royal F. Oakes, J. Russell Stedman, Barger & Wolen, Los Angeles, Cal., for The Equitable Life Assur. Soc. of U.S.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

This is an action for damages brought by plaintiff Donald R. Roberson, Jr. against The Equitable Life Assurance Society of the United States ("The Equitable") and Alpha Micro Systems. The matter concerns plaintiff's claims for benefits under a group health insurance policy issued by defendant The Equitable. Plaintiff seeks to recover benefits, insurance coverage and extra-contractual damages for the alleged mishandling of his claims by The Equitable. Plaintiff filed his complaint in the Superior Court of the State of California on October 8, 1985, naming both his employer, Alpha Micro Systems, and The Equitable as defendants. Alpha Micro Systems removed the action to this Court on April 2, 1986. On September 2, 1986, plaintiff filed a First Amended Complaint. No demand was made for a jury trial. The parties filed a Joint Status Conference Brief on August 18, 1986. Again, no request for a jury trial was made in this pleading. Plaintiff, recognizing that he failed timely to demand a jury trial and thereby waived his right of trial by jury under Fed.R.Civ.P. 38(d), now requests relief from the waiver pursuant to Rule 39(b). Defendants oppose plaintiff's motion and bring the instant motion for summary judgment.[1]

*Uncontroverted Facts*

The parties have already stipulated in the Pre-Trial Order to a set of admitted facts

---

1. Although defendant Alpha Micro has filed a separate motion for summary judgment, it has requested and the Court has granted permission for it to join in The Equitable's motion for summary judgment.

which cover all issues material to this motion. Defendants have filed the following statement of uncontroverted facts which substantially duplicates the contents of the Pre-Trial Order:

(1) In August, 1983, plaintiff began employment with defendant Alpha Micro Systems and, as a result, obtained health insurance coverage through group policy number 56601, D,H, issued to Alpha Micro Systems by defendant The Equitable.

(2) The employee group health insurance program made available to Alpha Micro Systems employees by Alpha Micro Systems, and maintained through the purchase of insurance from The Equitable, is an employee benefit plan, subject to and governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

(3) In May, 1984, plaintiff became ill and was diagnosed as suffering from severe ulcerative colitis.

(4) Plaintiff submitted to The Equitable for payment all medical bills incurred for treatment of his colitis condition which were provided on or before December 15, 1984. The Equitable paid plaintiff all benefits due for claims submitted for covered charges incurred on or before December 15, 1984. Plaintiff contends additional benefits are due for services rendered after December 15, 1984.

(5) Plaintiff's claims in this action against The Equitable are: that he is entitled to additional benefits under The Equitable's group policy; he is entitled to extra contractual damages for emotional distress as well as punitive damages for The Equitable's mishandling of his claim for benefits under the group policy issued to Alpha Microsystems by The Equitable; and plaintiff is entitled to convert his group coverage under the group policy to individual coverage.

Plaintiff has not filed a statement of genuine issues because he agrees with the facts as submitted by defendants. (Plf's Memo in Opp. to Summary Judgment, p. 2.) Thus, the only issue remaining is whether defendants are entitled to judgment as a matter of law.

## Pre-emption of state law claims by ERISA

Plaintiff's First Amended Complaint alleges eight claims against The Equitable: (1) breach of contract; (2) common law bad faith; (3) breach of statutory duty under California Insurance Code Section 790.03; (4) breach of fiduciary duty; (5) intentional infliction of emotional distress; (6) negligence; (7) intentional misrepresentation; and (8) negligent misrepresentation. Plaintiff alleges a ninth claim against defendant Alpha Microsystems for recovery of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA").

Defendants bring this motion for summary judgment in light of the Supreme Court's recent decision in *Pilot Life Insurance Company v. Dedeaux,* — U.S. —, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) which held that an employee's common law claims against an insurer under an employee benefits plan were pre-empted by ERISA. The pre-emption provisions of ERISA are contained in 29 U.S.C. § 1144:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . .

Under this section, Congress intended to pre-empt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by this chapter. *Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir.1977); *see also Ellenburg v. Brockway, Inc.,* 763 F.2d 1091 (9th Cir.1985) (employee's state claim for breach of implied covenant of good faith and fair dealing following denial of early retirement benefits under employer's pension plan originated from handling and disposition of employee's claim for early retirement benefits and was therefore directly connected with benefit plan and preempted by ERISA).

Plaintiff concedes that all his claims "relate to" an employee benefit plan covered by ERISA and are therefore subject to the

pre-emption provision of section 1144. (Pltf's Memo. in Opp. at 5–6); *see also Pilot Life Ins. Co. v. Dedeaux,* —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–3000, 77 L.Ed.2d 490 (1983). Plaintiff also concedes that all his claims based upon state common law are pre-empted. (Pltf's Memo. at 6); *see also Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1553 ("Unless these common law causes of action fall under an exception to § 514(a), therefore, they are expressly pre-empted."). However, plaintiff argues that his claim against The Equitable for breach of statutory duty under California Insurance Code Section 790.03(h) "regulates insurance" within the meaning of 29 U.S.C. § 1144(b)(2)(A), and therefore is saved from pre-emption by ERISA.

Subsection (b)(2)(A) of Section 1144, the so-called "saving clause," provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." As the Supreme Court said in *Pilot Life:* "The saving clause excepts from the pre-emption clause laws that 'regulate insurance.'" *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1552. For example, in *Metropolitan Life Insurance Company v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Court held that a Massachusetts statute that required minimum health care benefits to be provided Massachusetts residents covered by general health insurance policies was one that "regulated insurance" and was thus saved from ERISA pre-emption. On the other hand, in *Pilot Life,* the Court found that Mississippi's bad faith law did not regulate insurance within the meaning of the saving clause since the bad faith law was not specifically directed toward that industry.[2] *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1555.

Thus, the question presented is whether California Insurance Code Section 790.03(h)

is a law which regulates insurance within the meaning of 29 U.S.C. § 1144(b)(2)(A) and so would not be pre-empted by ERISA. The answer cannot be directly derived from the recent Supreme Court decisions on the topic. Unlike *Pilot Life,* which found that state common law was pre-empted, this case involves a state statutory law which, concededly, is specifically directed toward the insurance industry. (*See* Def's Memo. in Support of Summary Judgment, p. 18–19.) At the same time, Section 790.03(h) is also unlike the Massachusetts law "saved" in *Metropolitan Life,* in that Section 790.-03(h) is not a content regulation. *But see Presti v. Connecticut General Life Insurance Company,* 605 F.Supp. 163, 167–8 (N.D.Cal.1985) (finding that California Insurance Code section 790.03 is a state law which regulates insurance and is therefore excepted from pre-emption by the saving clause); *see also Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162 (C.D. Cal.1980); *McLaughlin v. Connecticut General Life Insurance Co.,* 565 F.Supp. 434, 443 (N.D.Cal.1983).

In *Metropolitan Life* the Court was cautious in interpreting the scope of ERISA pre-emption: "[t]he presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their pre-emptive scope." *Metropolitan Life,* 471 U.S. at 741, 105 S.Ct. at 2390, 85 L.Ed.2d at 741. Turning a deferential eye toward the state interest in regulating the insurance industry, the Court began by noting the long history and pervasive nature of state insurance regulation. *Id.* 471 U.S. at 727–31, 105 S.Ct. at 2381–82, 85 L.Ed.2d at 732–734.

The Court then announced the starting point for analyzing the applicability of the ERISA saving clause: "we ... have no choice but to 'begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative

---

**2.** The Court found that Mississippi's bad faith law, although presently identified with the insurance industry, had its roots in the general principles of Mississippi tort and contract law.

"Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law." *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1554.

purpose.' " [3]  *Id.* 471 U.S. at 740, 105 S.Ct. at 2389, 85 L.Ed.2d at 740 quoting *Park'n Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). To the Court, it was "obvious" that the Massachusetts law, by regulating the terms of certain insurance contracts, regulated the insurance industry, within the meaning of the ERISA saving clause. This was a "common-sense view of the matter." *Metropolitan Life*, 471 U.S. at 740, 105 S.Ct. at 2389, 85 L.Ed.2d at 740.

Moreover, the Court found the Massachusetts law in question regulated the "business of insurance," as that term is used in the McCarran-Ferguson Act, 15 U.S.C. § 1011 et. seq: [4]

Cases interpreting the scope of the McCarran-Ferguson Act have identified three criteria relevant to determining whether a particular practice falls within that Act's reference to the "business of insurance": *"first,* whether the practice has the effect of transferring or spreading a policy-holder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 73 L.Ed.2d 647, 102 S.Ct. 3002 [3009] (1982) (emphasis in original)... Application of these principles suggests that mandated-benefit laws are state regulation of the "business of insurance."

*Metropolitan Life*, 471 U.S. at 473, 105 S.Ct. at 2391, 85 L.Ed.2d at 742.

Finally, the Court emphasized the dearth of authority, particularly legislative history, indicating a contrary position to the view that laws regulating the terms of insurance contracts should be understood as laws that regulate insurance. The Court noted the paucity of congressional commentary over the ERISA pre-emption clause and rejected the view that Congress intended the saving clause to be given "narrow" interpretation. *Id.* 471 U.S. at 744–45, 105 S.Ct. at 2391–92, 85 L.Ed.2d at 743–744.

The Court widened its view of ERISA's pre-emptive potential in *Pilot Life*. While in *Metropolitan Life* the Court stressed the absence of a congressional intention strictly to limit the reach of the saving clause, 85 L.Ed.2d at 743–44, in *Pilot Life* the Court quoted Senator Williams' statement to the effect that there are but "narrow exceptions" to the ERISA bill's pre-emptive effect. *Pilot Life*, —— U.S. at ——, 107 S.Ct. at 1552 (quoting 120 Cong. Rec. 29933 (1974)). Nevertheless, the Court in *Pilot Life* adopted the test used in *Metropolitan Life:* first, the Court takes what guidance is available from a "common-sense view" of the language of the saving clause itself. Next, the Court makes use of the case law interpreting the phrase "business of insurance" under the McCarran-Ferguson Act. *Pilot Life*, —— U.S. at ——, 107 S.Ct. at 1553. *See also United Food and Commercial Workers v. Pacyga*, 801 F.2d 1157, 1160–61 (9th Cir. 1986) (employing the three McCarran-Ferguson factors to determine that an Arizona antisubrogation law did not regulate insurance).

The Court concluded that in order for a state law to regulate insurance as a matter of "common sense," it must "not just have an impact on the insurance industry, but be

---

3. According to the Court:

"In deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue. 'Preemption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 51 L.Ed.2d 604, 97 S.Ct. 1305 (1977).' *Fidelity Federal Savings & Loan Assn v. De La Cuesta*, 458 U.S. 141, 152–153, 73 L.Ed.2d 664, 102 S.Ct. 3014 (1982)."

*Metropolitan Life*, 471 U.S. at 738, 105 S.Ct. at 2388, 85 L.Ed.2d at 739 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983)).

4. The McCarran-Ferguson Act provides, in pertinent part, that "No Act of Congress shall be contrued to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ...." 15 U.S.C. § 1012(b).

specifically directed toward that industry." *Pilot Life*, —— U.S. at ——, 107 S.Ct. at 1554. The Court also found that the factors examined under the McCarran-Ferguson Act supported pre-emption: although the Mississippi bad faith law was arguably "identified" with the insurance industry, it did not effect a spreading of policyholder risk and had only an "attenuated" connection to the insurer-insured relationship. "Accordingly, the Mississippi common law of bad faith at most meets one of three criteria used to identify the 'business of insurance' under the McCarran-Ferguson Act, and used in *Metropolitan Life* to identify laws that 'regulat[e] insurance' under the saving clause." *Id.*

Finally, and most important[5], the Court justified a narrower view of the saving clause by looking at the ERISA statute as a whole. Of specific importance are the civil enforcement provisions of ERISA. The Court found that the civil enforcement provisions are intended by Congress to provide the exclusive remedies for improper processing of a claim for benefits under an ERISA-regulated plan:

> In sum, the detailed provisions of section 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA....
>
> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive. This conclusion is fully confirmed by the legisla-

tive history of the civil enforcement provision.

*Pilot Life*, —— U.S. at ——, 107 S.Ct. at 1556–57; *see also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985).

In *Pilot Life*, the Court distinguished its ruling supporting pre-emption from its earlier ruling in *Metropolitan Life* supporting exception to pre-emption under the saving clause by pointing out that the Massachusetts law at stake in *Metropolitan Life* did not conflict with a substantive provision in ERISA. "In particular, the Court had no occasion to consider in *Metropolitan Life* the question raised in the present case whether Congress might clearly express through the structure and legislative history of a particular substantive provision of ERISA, an intention that the federal remedy provided by that provision displace state causes of action. Our resolution of this different question does not conflict with the Court's earlier general observations in *Metropolitan Life*." *Pilot Life*, —— U.S. at ——, 107 S.Ct. at 1558.

California Insurance Code Section 790.03 is a provision of the Unfair Practice Act, Cal.Ins.Code § 790 et seq. The purpose of the Act is "to regulate trade practices in the business of insurance ... by defining ... all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Cal.Ins.Code § 790. Section 790.03 presents a less extreme example of insurance regulation than either the content regulating Massachusetts law "saved" in *Metropolitan Life* or the punitive-damages availing Mississippi law that was found clearly in conflict with ERISA's civil enforcement provisions in *Pilot Life*.

Section 790.03 is a comprehensive law. Part of it is designed to prohibit unfair methods of competition and includes such proscriptions as the making or permitting of any unfair discrimination between indi-

---

5. *See Pilot Life.* —— U.S. at ——, ——, 107 S.Ct. at 1557–58 (referring to the exclusivity of ERISA's civil enforcement provisions as the most important reason for finding that Mississippi's bad faith law was not saved from pre-emption).

viduals of the same class in the rates charged for any contract of life insurance. Cal.Ins.Code § 790.03(f). The other part of the section, and the part under which plaintiff brings the instant action, is directed toward prohibiting insurers from engaging in certain unfair claims settlement practices. *See* Cal.Ins.Code Section 790.03(h).

The most persuasive argument in support of saving the California statute is its obvious connection to regulating insurance. Thus, under the "common sense" test, it would strain logic to argue that section 790.03(h) is not specifically directed toward the insurance industry. *See Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1554. Indeed, defendants concede that section 790.03(h) at least meets the third factor of the McCarran-Ferguson test in that it is directed to those persons and entities "engaged in the business of insurance."

However, it is unlikely that section 790.-03(h) meets either of the other two factors of the McCarran-Ferguson test. *See United Food & Commercial Workers,* 801 F.2d at 1161 (stating that "[n]o one factor is dispositive; rather each is instructive" and finding that an Arizona state law did not regulate insurance where only one of the three factors was met). First, it would not appear that 790.03(h) has any effect of transferring or spreading policyholder risk. Unlike the Massachusetts law in *Metropolitan Life,* section 790.03(h) does not purport to regulate the substantive terms or content of insurance policies by mandating benefits. Rather, subsection (h) of section 790.03 primarily is aimed at the procedural aspect of processing and settling claims.

The third prong of the McCarran-Ferguson test, discerning whether the state law in question concerns the policy relationship between the insurer and the insured, is the most difficult to resolve. Unlike the mandated-benefits law in *Metropolitan Life,* section 790.03(h) does not define the terms of the relationship between the insurer and the insured; however, it affects the insur-er-insured relationship more profoundly than the Mississippi bad faith law in *Pilot Life* that merely provided punitive damages for a breach of existing terms of a contract. For example, under section 790.03(h) an insured can sue his insurer for a host of specific deceptive and/or bad faith insurance claims practices.[6] *Presti v. Connecticut General Life Insurance Company, Inc.,* 605 F.Supp. 163, 168 (N.D.Cal.1985); *Royal Globe Ins. Co. v. Superior Court of Butte County,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979). Although the section itself is derived from general principles of tort and contract law, *Richardson v. Gab Business Services, Inc.,* 161 Cal. App.3d 519, 524, 207 Cal.Rptr. 519, 522 (1984), it is arguably more definitive about what constitutes bad faith than the preexisting common law which, in evaluating an insurer's actions in denying policy benefits, merely provided for a standard of reasonableness. *Presti,* 605 F.Supp. at 168.

Despite its providing for more specific standards of conduct in processing claims for benefits, section 790.03(h) is not "integral" to the insurer-insured relationship. Section 790.03(h) does not regulate the terms of the contract itself and hence does not regulate "the business of insurance" as that term is defined under the McCarran-Ferguson Act. "In enacting the McCarran-Ferguson Act, 'Congress was concerned with the type of state regulation that centers around the contract of insurance ...'" *Powell v. Chesapeake & Potomac Telephone Co. of Virginia,* 780 F.2d 419, 423 (4th Cir.1985). In *Powell,* the Fourth Circuit Court of Appeals found that the saving clause of ERISA did not exempt from preemption state laws regulating insurance under Virginia's Unfair Trade Practices Act., Va.Code § 38.1–49, et seq. While recognizing that there might be some instances in which the requirements of the statute would reach "purely administrative activities of insurers", the court concluded

---

**6.** Examples of specific types of conduct under which subsection (h) may create a cause of action include: failing to adopt reasonable standards for prompt investigation and processing of claims; requiring a claimant to file duplic-itous reports; failing to provide a prompt and reasonable explanation for denial of a claim; advising a claimant not to obtain the services of an attorney.

that "such regulation would not bear upon the 'business of insurance' within contemplation of ERISA's insurance saving clause and thus is not saved from pre-emption by ERISA." *Id.* at 423–24. The Virginia law was very similar to the California unfair practices statute at issue here.[7] *See also Scott v. Gulf Oil Co.,* 754 F.2d 1499, 1504 (9th Cir.1985) (pre-emption of state law claims by ERISA depends on conduct to which such law is applied, not on form or label of the law).

Plaintiff urges the Court to accord a broader interpretation to the saving clause and section 790.03(h). Plaintiff argues that section 790.03 is *regulatory* in nature and therefore within the meaning of the ERISA saving clause, which exempts from pre-emption any state law seeking to regulate insurance. This argument was explicitly rejected in *Pilot Life.* In that case, the Court considered a Mississippi law that concededly was "identified" with the insurance industry. *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1554. Yet because the civil enforcement provisions of ERISA were intended to provide the exclusive remedies for mishandling of claims, the Mississippi law was in conflict with ERISA and was therefore pre-empted. *Id.* at ——, 107 S.Ct. at 1555, 58.

The same potential for conflict with ERISA's civil enforcement provisions exists with respect to California Insurance Code Section 790.03(h). For example, under ERISA's civil enforcement provisions a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the claimant's rights under the plan, or to clarify rights to future benefits. Section 502(a)(1) specifically provides that relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits. 29 U.S.C. § 1132(a); *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1555. Section 790.03(h), on the other hand, provides that either an insured *or* third-party claimant may sue an insurer for engaging in unfair claims settlement practices, including not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear and directly advising a claimant not to obtain the services of an attorney. Cal.Ins.Code Section 790.-03(h)(5), (14); *Royal Globe,* 23 Cal.3d at 884, 153 Cal.Rptr. at 844–45. Such provisions reach impermissibly beyond the scope of ERISA. *See, e.g. Russell,* 473 U.S. at 145, 105 S.Ct. at 3092, 87 L.Ed.2d at 105 (holding that ERISA does not grant a private right of action for delay in processing benefit claims). "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.,* 473 U.S. at 146, 105 S.Ct. at 3093, 87 L.Ed.2d at 106 (*quoted in Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1556) (emphasis in original).[8] Even where Cali-

---

7. *See Powell,* 780 F.2d at 422 n. 4 ("The Virginia Unfair Trade Practices Act constitutes Article 6 of Virginia's Insurance Code and declares as its purpose the regulation of trade practices in the business of insurance"). Powell brought her claim pursuant to § 38.1–52.1, which provides that "[n]o person shall make, issue, [or] circulate ... any estimate, illustration, statement ... or comparison which (1) Misrepresents the benefits, advantages, conditions or terms of any insurance policy." This section is substantially the same as California Insurance Code § 790.-03(a) and (h)(1). In the instant case, plaintiff argues that section 790.03 was derived from a Model Act sponsored by the National Association of Insurance Commissioners. Given the apparent similarity between the California statute and the Virginia statute, it is likely the

Virginia Unfair Trade Practices Act was similarly derived from the Model Act.

8. The Supreme Court's decision in *Pilot Life* makes clear that the ERISA civil enforcement provisions have a "complete" pre-emptive effect. *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1557–58. In such a situation, the pre-emptive force "is so powerful as to displace entirely any state cause of action" for mishandling of insurance claims brought under an ERISA plan. *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420, 439 (1983) (referring to *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), in which the Court affirmed the controlling effect federal law has over any action to enforce an agreement within the scope

fornia Insurance Code section 790.03(h) does not directly conflict with ERISA's civil enforcement provisions, *Pilot Life* commands that it should be pre-empted because its standards overlap with a statutory and regulatory code of conduct already prescribed by ERISA. *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1557–58; *see also Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1215–16 (8th Cir. 1981) ("If Congress has already provided a remedy [under ERISA] . . . the state law is pre-empted, regardless of whether or not a conflict exists which involves a direct interference by the state law with [ERISA].") (*quoted in Powell,* 780 F.2d at 422). For example, section 503 of ERISA states that every employee benefit plan shall comply with certain Department of Labor regulations requiring the plan to give adequate notice to any participant or beneficiary whose claim for benefits has been denied and to set forth the specific reasons for such denial. 29 U.S.C. § 1133. Section 503 further mandates compliance with regulations requiring every plan to afford a reasonable opportunity for review of the decision denying the claim. These provisions are substantially duplicated by Cal.Ins. Code section 790.03(h)(13).[9]

■ Thus, even assuming that section 790.03(h) regulates insurance and is therefore within the scope of the saving clause, it must be pre-empted for infringing on the same exclusive civil remedy provisions that were dispositive in *Pilot Life*.[10] The drafting of the civil enforcement provisions and the congressional interest in creating a framework which would result in uniformity of decision "makes clear [Congress'] intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulat-

ed plans be treated as federal questions governed by § 502(a)." *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1557.

Ruling as the Court does that plaintiff's claim under section 790.03(h) is pre-empted by ERISA disposes of all claims asserted against defendant The Equitable. Defendant Alpha Microsystems has brought a separate motion for summary judgment on the ground that the ninth cause of action alleging a claim to recover benefits under ERISA is also pre-empted as exclusively subject to the provisions of ERISA. Plaintiff has failed to file papers in opposition to this part of defendant's motion. Under Local Rule 7.9, such failure to respond may be deemed plaintiff's consent to the Court granting defendant's motion. Fairness to the parties and the need of this Court efficiently to manage its docket require strict adherence to the Local Rules. Hence, defendants' motions for summary judgment are granted; plaintiff's motion for relief from waiver of jury trial is now moot.

*Jury trial waiver*

■ In view of the disposition of defendants' motions for summary judgment, it is unnecessary to address plaintiff's motion for relief from waiver of his trial by jury. However in the interests of efficiency and since the motion is outstanding, to rule appears appropriate.

It is clear in the Ninth Circuit that a district court does not abuse its discretion in denying a request for a jury trial under Rule 39(b) when the only excuse for the failure timely to file a demand is oversight, inadvertence, neglect, or counsel's unfamiliarity with federal practice and procedure. *See, e.g., Wall v. National Railroad Passenger Corp.,* 718 F.2d 906, 909–10 (9th Cir.1983); *Beckham v. Safeco Insurance Co.,* 691 F.2d 898, 905 (9th Cir.1982); *Bell*

---

of § 301 of the Labor Relations Management Act). *Cf. Williams v. Caterpillar Tractor Co.,* 786 F.2d 928, 932 n. 2 (9th Cir.1986).

**9.** The Secretary of Labor's rulemaking power is set forth in ERISA § 505, 29 U.S.C. § 1135. The regulations themselves can be found in 29 C.F.R. § 2560.503–1.

**10.** This case is unlike *General Motors Corporation v. California State Board of Equalization,*

815 F.2d 1305 (9th Cir.1987), in which the Ninth Circuit ruled that ERISA does not pre-empt a premiums tax assessed against an insurer and calculated with reference to benefits paid by ERISA plans. The opinion was written before the Supreme Court ruled in *Pilot Life* and does not, in any event, involve a state law that conflicts with a substantive provision of ERISA. *See Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1557–58.

*v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1285 (9th Cir.1982); *Chandler Supply Co. v. GAF Corp.*, 650 F.2d 983, 987–88 (9th Cir.1980). Indeed, Ninth Circuit authority suggests that the district judge may actually abuse his discretion by granting relief in these circumstances. *See, e.g., Lewis v. Time Inc.*, 710 F.2d 549, 556–57 (9th Cir.1983); *Mardesich v. Marciel*, 538 F.2d 848, 849 (9th Cir.1976).

Plaintiff has made no showing other than unfamiliarity and oversight. Further, the request for relief was made on the eve of trial. Thus, while assuming plaintiff's right to a jury trial under Fed.R.Civ.P. 38(a), his extremely belated demand impels the conclusion that his waiver must stand. *See Harthan v. Arabian American Oil Co.*, 92 F.R.D. 4, 5 (S.D.N.Y.1981).

ACCORDINGLY, plaintiff's motion for relief of waiver of jury trial is denied and defendants' motions for summary judgment are granted. IT IS SO ORDERED.