Janet O. DENETTE, Plaintiff,

v.

LIFE OF INDIANA INSURANCE CO., Defendant.

Civ. A. No. 88–C–655.

United States District Court, D. Colorado.

Sept. 1, 1988.

**960**

Gary Nicholas, Denver, Colo., for plaintiff.

Bonnie J. McLaren, David G. Harris, Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiff Janet O. Denette commenced this action by filing a complaint in the state district court for the City and County of Denver, Colorado. Defendant Life of Indiana Insurance Company ("Life") then filed a verified petition for removal pursuant to 28 U.S.C. § 1441. Defendant asserts that jurisdiction exists under 28 U.S.C. §§ 1331 and 1332. As will be explained, this case is now in a posture requiring that I determine whether this court has jurisdiction or the case should be remanded to the state court.

The complaint alleges the following: Denette is a Colorado resident who at all relevant times was employed by Juanitas, Inc., d/b/a Berardi and Sons. As an employee, she was covered under a group sickness and accident insurance policy issued by the defendant Life, an Indiana corporation. On April 6, 1987, following a routine physical examination, Denette's physician requested an electrocardiogram and other testing. As a result of those tests she was diagnosed for the first time

to have a condition known as silent ischemia.

The complaint further alleges that from April 6, 1987 through November 1, 1987 Denette incurred expenses for medical services and supplies related to the diagnosis and treatment of silent ischemia, in an amount in excess of $1,500, and submitted claims to Life for payment under the insurance policy. Life has denied coverage and has refused to compensate Denette for the above-stated expenses. Life asserts that the plaintiff had previously sought treatment for her illness and that coverage was therefore precluded by the policy's "preexisting condition" clause.

Three claims for relief are alleged in the complaint, all dependent on state law. The first claim requests a declaratory judgment declaring that the "preexisting condition" clause of Life's policy violates Colo.Rev. Stat. § 10–8–116(2)(a). The second claim for relief alleges breach of contract. The third claim alleges outrageous conduct and breach of the covenant of good faith and fair dealing, all in violation of Colo.Rev. Stat. §§ 10–3–1113(1)(a), (c), 10–3–1104(1)(h)(I) to (XIV), and 10–8–116(2)(a)(V). The complaint includes a prayer for relief requesting actual and consequential damages, compensation for mental and emotional distress, punitive damages, and attorneys' fees.

On May 12, 1988, the plaintiff submitted a Response to Verified Petition for Removal, requesting that this action be remanded to state court because this court has neither diversity nor federal question jurisdiction. By minute order I directed that the "Response" be treated as a motion for remand. The parties have briefed the issues and oral argument would not materially assist my decision.

Section 1441(a), 28 U.S.C., states that unless otherwise provided by Act of Congress, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction" may be removed by the defendant to the district court of the United States. Section 1446, 28 U.S.C., provides the procedure for removal. A case removed under § 1446

may be remanded only in accordance with 28 U.S.C. § 1447. *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 342, 96 S.Ct. 584, 588, 46 L.Ed.2d 542 (1976). The pertinent part of § 1447 is subsection (c). That subsection provides, in material part:

> "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs."

Defendant insists that removal was proper because diversity jurisdiction exists under 28 U.S.C. § 1332, and federal question jurisdiction is present pursuant to 28 U.S.C. § 1331. More specifically, the defendant asserts that diversity jurisdiction exists because (1) there is diversity of citizenship among the parties; and (2) the matter in controversy exceeds $10,000, exclusive of interest and costs. Alternatively, the defendant argues that federal question jurisdiction exists under 28 U.S.C. § 1331 because the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, preempts the plaintiff's state law claims for relief.

In response, Denette insists that diversity jurisdiction does not exist because: (1) the defendant Life is a Colorado resident; and (2) she "has *not* requested an amount in excess of $10,000 in her complaint and [she] affirmatively states that she did not file the state court complaint seeking $10,-000 or more, in damages." (Plaintiff's "Response," at 2; emphasis in original). Additionally, Denette contends that ERISA does not preempt her state law claims for relief.

There is no support in the record for the plaintiff's contention that Life is a Colorado resident. To the contrary, the affidavit of Sharon Akers, claims vice-president of Life, affirmatively states that Life is an Indiana corporation with its principal place of business in Indiana. *See United Nuclear Corp. v. Moki Oil and Rare Metals Co.*, 364 F.2d 568, 569 (10th Cir.1966), *cert. denied*, 385 U.S. 960, 87 S.Ct. 393, 17 L.Ed.2d 306 (1966) (for purposes of § 1332 a corporation is deemed to be "a citizen of any state by which it has been incorporated and of the state where it has its principal place of business").

■ While the complaint is silent as to the amount in controversy, the defendant argues that "a reasonable reading of the Plaintiff's Complaint discloses the sum prayed for does in fact exceed $10,000.00." (Response, at 5.) Defendant alternatively argues that its removal petition establishes an amount in controversy greater than $10,000. However, as quoted above, the plaintiff contends that she is not seeking damages in the amount of $10,000 or more. Thus she has waived any award of damages above that amount. Accordingly diversity jurisdiction is not present.

The remaining issue therefore is whether federal question jurisdiction exists.

ERISA comprehensively regulates employee benefit plans. It establishes various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility. *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). Under § 502(a), 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...."

ERISA contains a broad preemption provision declaring that the statute shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." Section 514(a), 29 U.S.C. § 1144(a). However, while § 514(a) broadly preempts state laws that relate to an employee-benefit plan, that preemption is substantially qualified by an "insurance saving clause," § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). *Metropolitan Life*, 471 U.S. at 733, 105 S.Ct. at 2385.

Section 514(b) provides that "nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b). This saving clause exempts from preemption

state laws that "regulate insurance." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

As mentioned above, the complaint alleges that the defendant violated Colo.Rev. Stat. §§ 10–3–1113(1)(a) and (c), 10–3–1104(1)(h)(I) to (XIV), and 10–8–116(2)(a)(V).

Section 10–3–1113(1)(a), Colo.Rev.Stat., provides that in any civil action for damages founded upon contract, or tort, or both, against an insurance company, "the trier of fact may be instructed that the insurer owes its insured the duty of good faith and fair dealing, which duty is breached if the insurer delays or denies payment without a reasonable basis for its delay or denial." Subsection (c) states that under a policy of first-party insurance, the determination of whether the insurer's delay or denial was reasonable "shall be based on whether the insurer knew that its delay or denial was unreasonable or whether the insurer recklessly disregarded the fact that its delay or denial was unreasonable."

Section § 10–3–1104(1)(h)(I) to (XIV), Colo.Rev.Stat., provides as follows:

(h) Unfair claim settlement practices: Committing or performing, either in willful violation of this part 11 or with such frequency as to indicate a tendency to engage in a general business practice, any of the following:

(I) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; or

(II) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; or

(III) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; or

(IV) Refusing to pay claims without conducting a reasonable investigation based upon all available information; or

(V) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; or

(VI) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; or

(VII) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; or

(VIII) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application; or

(IX) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured; or

(X) Making claim payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made; or

(XI) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration; or

(XII) Delaying the investigation or payment of claims by requiring an insured or claimant, or the physician of either or them, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information; or

(XIII) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; or

(XIV) Failing to provide a reasonable explanation of the basis of the insurance policy in relation to the facts or

applicable law for denial of a claim or for the offer of a compromise settlement; ...."

Finally, Colo.Rev.Stat. § 10–8–116(2)(a) states in relevant part:

"No policy of group sickness and accident insurance shall be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which, in the opinion of the commissioner, are more favorable to the persons insured or at least as favorable to the persons insured and more favorable to the policyholder:

\* \* \* \* \* \*

(V) A provision specifying the additional exclusions or limitations, if any, applicable under the policy with respect to a disease or physical condition of a person.... Any such exclusion or limitation may only apply to a disease or physical condition for which medical advice or treatment was received by the person during the twelve months prior to the effective date of his coverage."

Clearly the above-quoted provisions "relate to" an employee health benefit plan, and therefore fall under ERISA's express preemption clause, § 514(a). *See Pilot Life*, 107 S.Ct. at 1553 (phrase "relate to" is given its broad common sense meaning such that a state law "relate to" a benefit plan if it has a connection or reference to such plan). Thus unless these statutes fall under an exception to § 514(a), they are expressly preempted by ERISA. *Id.* at 1553.

Plaintiff insists that these statutes "regulate insurance" as that term is used in the saving clause and are therefore not preempted by ERISA. Defendant contends the opposite. Thus the ultimate issue is whether these Colorado statutes "regulate insurance" as that term is used in the saving clause.

In both *Metropolitan Life, supra,* 471 U.S. 724, 105 S.Ct. 2380, and *Pilot Life, supra,* 107 S.Ct. 1549, the Court was guided by several considerations in determining whether a state law "regulates insurance." First, the Court considered a "common sense view" of the language of the saving clause itself. Second, it looked to case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.,* in interpreting the saving clause. Specifically, the three criteria used by the Court in *Metropolitan Life* and *Pilot Life* to determine whether a state law falls under the "business of insurance" for purposes of the McCarran–Ferguson Act were as follows:

(1) Whether the state law has the effect of transferring or spreading a policy holder's risk;

(2) Whether the state law is an integral part of the policy relationship between the insurer and the insured; and

(3) Whether the state law is limited to entities within the insurance industry.

Although the court applied the above considerations in both *Metropolitan Life* and *Pilot Life,* the Court reached opposite conclusions as to whether the state law in issue "regulated insurance" for purposes of the ERISA saving clause.

In *Metropolitan Life, supra,* 471 U.S. 724, 105 S.Ct. 2380, the applicable state statute required all general health insurance policies that provided hospital and surgical coverage, and all benefit plans that had such coverage, to also provide a certain minimum of mental health protection. The Court held that this statute "regulated insurance" and therefore was not preempted by ERISA. According to the Court it was obvious that the Massachusettes law "regulates the terms of certain insurance contracts, and so seems to be saved from pre-emption by the saving clause as a law 'which regulates insurance.' " *Id.* at 740, 105 S.Ct. at 2389. The Court stressed that "[t]he presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their pre-emptive scope." *Id.* at 741, 105 S.Ct. at 2390. The court then expressly rejected the defendants' argument that the saving clause did not apply to state laws that regulate the substantive terms of an insurance contract. *Id.* at 741–42, 105 S.Ct. at 2390. Additionally, the Court empha-

sized the lack of authority indicating a contrary position to the view that laws regulating the terms of insurance contracts should be characterized as laws that regulate insurance. *Id.* at 744–45, 105 S.Ct. at 2391–92.

The Court in *Metropolitan Life* further stated that the case law concerning the phrase "business of insurance" in the McCarran–Ferguson Act "also strongly supports the conclusion that regulation regarding the substantive terms of insurance contracts falls squarely within the saving clause as laws 'which regulate insurance.' " 471 U.S. at 742–43, 105 S.Ct. at 2390–91. The Court then determined that the Massachusetts law met all three of the factors listed above. First, the Court stated that the law "regulates the spreading of risk" because "it was intended to effectuate the legislative judgment that the risk of mental-health care should be shared." *Id.* at 743, 105 S.Ct. at 2391. Second, the Court determined that the law directly regulated an integral part of the relationship between the insurer and the policyholder by limiting the type of insurance that an insurer may sell to the policy holder. Third, the Court concluded that the statute imposed requirements solely on insurers, and therefore was intended to affect the relationship between the insurer and the policy holder. *Id.*

As mentioned, an opposite result was reached in *Pilot Life, supra.* There the plaintiff asserted three common law claims for relief against the defendant insurance company: (1) tortious breach of contract; (2) breach of fiduciary duties; and (3) fraud in the inducement. In his argument before the Court the plaintiff contended that his claim for tortious breach of contract, referred to in his brief as "the Mississippi law of bad faith," was a law "which regulates insurance," and therefore was saved from preemption by § 514(b)(2)(A).

The Court disagreed, partly reasoning that the McCarran–Ferguson Act factors did not support the assertion that the Mississippi bad-faith law regulated insurance:

"Unlike the mandated-benefits law at issue in *Metropolitan Life*, the Mississippi common law of bad faith [1] *does not effect a spreading of policyholder risk.* The state common law of bad faith may be said to concern 'the policy relationship between the insurer and the insured.' [2] *The connection to the insurer-insured relationship is attenuated, at best,* however. In contrast to the mandated-benefits law in *Metropolitan Life*, the common law of bad faith *does not define the terms of the relationship between the insurer and the insured;* it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages. The state common law of bad faith is therefore no more 'integral' to the insurer-insured relationship than any state's general contract law is integral to a contract made in that state. Finally, as we have just noted, [3] *Mississippi's law of bad faith, even if associated with the insurance industry, has developed from general principles of tort and contract law available in any Mississippi breach of contract case.*" *Id.* 107 S.Ct. at 1549 (emphasis added).

The Court next determined that its narrower view of the saving clause was justified by looking at the ERISA statute as a whole. Specifically, the Court concluded that the civil enforcement provisions of ERISA were intended by Congress to provide the exclusive remedies for improper processing of a claim for benefits under an ERISA–regulated plan. The Court stated:

"In sum, the detailed provisions of section 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA–plan participants and beneficiaries were free to obtain remedies un-

der state law that Congress rejected in ERISA.

\* \* \* \* \* \*

"The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive. This conclusion is fully confirmed by the legislative history of the civil enforcement provision." 107 S.Ct. at 1556–57.

Opposite results were reached in *Metropolitan Life* and *Pilot Life* primarily because the characteristics of the respective state laws mandated such results once the McCarran–Ferguson Act "business of insurance" factors were applied. However, the Court in *Pilot Life* also distinguished its ruling supporting preemption from its earlier ruling in *Metropolitan Life* supporting exception to preemption by observing that the Massachusetts law at stake in *Metropolitan Life* did not conflict with a substantive provision in ERISA. The Court explained:

"In particular the court had no occasion to consider in *Metropolitan Life* the question raised in the present case: whether Congress might clearly express through the structure and legislative history of a particular substantive provision of ERISA, an intention that the federal remedy provided by that provision displace state causes of action. Our resolution of this different question does not conflict with the Court's earlier general observations in *Metropolitan Life.*" 107 S.Ct. at 1558.

In support of its contention that the Colorado statutes at issue here are not covered by the saving clause, the defendant relies on *Roberson v. Equitable Life Assurance Society of the United States,* 661 F.Supp. 416 (C.D.Cal.1987). There the relevant state law was California Insurance Code § 790.03, a provision of the Unfair Practice Act, Cal.Ins.Code § 790 *et seq.* The stated purpose of the Act was "to regulate trade practices in the business of insurance." The court described § 790.03 as "a compre-

hensive law ... designed to prohibit unfair methods of competition and includes such proscriptions as the making or permitting of any unfair discrimination between individuals of the same class in the rates charged for any contract of life insurance." *Id.* at 421–22. Additionally, the law was "directed toward prohibiting insurers from engaging in certain unfair claims and settlement practices." *Id.* at 422.

In applying the McCarran–Ferguson Act factors relied on by the Court in *Metropolitan Life* and *Pilot Life,* the *Roberson* court first determined that under the "common sense" test "it would strain logic to argue that section 790.03(h) is not specifically directed toward the insurance industry." 661 F.Supp. at 422. Indeed, the defendants had even conceded that the law met the third factor of the McCarran–Ferguson test in that it was directed to those persons and entities "engaged in the business of insurance." *Id.*

Nevertheless, the *Roberson* court concluded that § 790.03(h) failed to meet either of the first two factors of the McCarran–Ferguson Act test. First, the court found that § 790.03(h) did not transfer or spread policy holder risk. The court reasoned: "Unlike the Massachusetts law in *Metropolitan Life,* section 790.03(h) does not purport to regulate the substantive terms or content of insurance policies by mandating benefits. Rather, subsection (h) of section 790.03 primarily is aimed at the procedural aspect of processing and settling claims." *Id.*

Second, with respect to the remaining prong of the McCarran–Ferguson Act test, discerning whether the state law in question concerns the policy relationship between the insurer and the insured, the court determined that § 790.03(h) "is not 'integral' to the insurer-insured relationship." *Id.* The court also determined that even if § 790.03 was within the scope of the saving clause, it still had to be preempted because its provisions conflicted with ERISA's exclusive remedy provisions. 661 F.Supp. at 424.

As discussed above, the plaintiff here alleges that the defendant violated Colo.

Rev.Stat. §§ 10–3–1113(1)(a) and (c), 10–3–1104(1)(h)(I) to (XIV), and 10–8–116(2)(a).[1] Underlying the plaintiff's claims for relief are her contentions that: (1) the defendant improperly handled her insurance claim in violation of § 10–3–1113(1)(a) and (c), and § 10–3–1104(1)(h); and (2) the language in the defendant's insurance policy did not comply with the requirements of § 10–8–116(2)(a)(V). Separate discussion of these two contentions will facilitate analysis of the statutes. I shall begin by addressing the first contention.

1. *Improper Handling of Insurance Claim in Violation of Colo.Rev.Stat. §§ 10–3–1113(1)(a) and 10–3–1104(1)(h).*

 I conclude that Colo.Rev.Stat. § 10–3–1113(1)(a) and (c), and § 10–3–1104(1)(h) do not "regulate insurance" as that phrase is used in the ERISA saving clause, and has been construed in *Metropolitan Life, Pilot Life,* and other cases. True, as in *Roberson, supra,* those statutes are limited to entities within the insurance industry, and therefore the third prong of the McCarran–Ferguson Act test is met.

Nevertheless, also as in *Roberson,* the statutes here do not qualify under the remaining two McCarran–Ferguson requirements. First, there is no indication that the statutes relied upon by the plaintiff have any effect of transferring or spreading policy holder risk. Those statutes generally are directed toward preventing and remedying unfairness in the insurance business. Section 10–3–1101 states:

"The purpose of this part 11 is to regulate trade practices in the business of insurance by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined. No rules or regulations shall be promulgated to adversely affect free and open competition in the sale of insurance."

Indeed the statutes are very similar in substance to the Mississippi law of bad faith that the Court in *Pilot Life* concluded was not covered by the saving clause, and the unfair practices law in *Roberson,* where the court reached the same conclusion. It is also clear that unlike the Massachusetts law in *Metropolitan Life,* these statutes do not purport to regulate the substantive terms or content of insurance policies by mandating certain benefits.

The remaining prong of the McCarran–Ferguson test inquires whether the state law in question concerns the policy relationship between the insurer and the insured. As in *Roberson* the statutes here do affect the insurer-insured relationship. Yet also as in *Roberson,* the statutes are not "integral" to the insurer-insured relationship because they do not seek to control the substantive terms of the insurance contract itself.[2]

---

**1.** Notably, several of the provisions in § 10–3–1104(1)(h)(I)–(XIV) clearly do not pertain, indirectly or otherwise, to the subject matter of this litigation.

**2.** Defendant also argues that Colorado statutes relevant to the plaintiff's case potentially conflict with ERISA's civil enforcement provisions. For example, under ERISA's civil enforcement provisions, only a plan participant or beneficiary may sue to recover benefits due under the plan, or to enforce the claimant's rights under the plan, or to clarify rights to future benefits. Section 502, 29 U.S.C. § 1132. Additionally, under § 502(a)(1), relief may be in the form of: (1) accrued benefits due; (2) a declaratory judgment; or (3) an injunction against a plan administrator's improper refusal to pay benefits. In contrast, Colo.Rev.Stat. §§ 10–3–1101, *et seq.* do not limit who can sue an insurer for unfair claims practices.

Defendant asserts that an additional area of potential conflict is presented by Colo.Rev.Stat. § 10–3–1104(1)(h), which concerns improper and untimely payment of claims. ERISA has established a comprehensive framework for claims handling including a ninety day period for initial review and communication of a denial, and a sixty day period in which the claims reviewing fiduciary is to hear an appeal and render a decision. 29 C.F.R. § 2560.503–1(a)—(h); 29 U.S.C. § 1133. Thus the defendant contends that claims based upon non-compliance with Colo.Rev.Stat. § 10–3–1104(1)(h) intrude on the congressional intent to impose exclusive federal regulation over planned administration, claims handling, and civil enforcement. However, as discussed in the text of this order, the defendant has not pointed to any ERISA provision that either mirrors or conflicts with Colo.Rev.Stat. § 10–8–116(2)(a)(V).

### 2. *Violation of Colo.Rev.Stat. § 10–8–116(2)(a).*

While I conclude that Colo.Rev.Stat. §§ 10–3–1113(1)(a) and (1)(c) do not "regulate insurance" as that term is used in the ERISA saving clause, I reach the opposite conclusion with respect to Colo.Rev.Stat. § 10–8–116(2)(a)(V). That statute is similar to the Massachusetts law involved in *Metropolitan Life* which the Court ruled was covered under the ERISA saving clause because it regulates the substantive terms of insurance policies. Specifically, it imposes guidelines on policy language regarding coverage of preexisting conditions.

Moreover I find that § 10–8–116(2)(a)(V) meets all three of the McCarran–Ferguson Act requirements. First, as in *Metropolitan Life*, the statute here has the effect of transferring or spreading a policy holder's risk. Clearly, to the extent that § 10–8–116(2)(a)(V) prevents an insurance company from limiting coverage for preexisting conditions, it spreads the risk of such coverage to other policy holders. The law reflects legislative intent to secure for policy holders protection against denial of coverage.

The statute satisfies the second prong of the test because it regulates an explicit part of the relationship between insurer and insured by imposing guidelines on the substantive terms of insurance contracts. Finally, the third prong of the test is met because the statute was intended to affect the relationship between the insurer and the policy holder. *See Metropolitan Life, supra,* 471 U.S. at 743, 105 S.Ct. at 2391.

Importantly, the defendant has not directed this court's attention to any ERISA provision that either mirrors or conflicts with § 10–8–116(2)(a)(V). Thus the defendant cannot argue that § 10–8–116(2)(a)(V) is preempted by ERISA on the ground that it conflicts with ERISA's civil enforcement remedies.

In sum, I find and conclude that Colo. Rev.Stat. § 10–3–1113(1)(a) and (c), and § 10–3–1104(1)(h) are preempted by ERISA but that § 10–8–116(2)(a)(V) is not because it is covered by the ERISA saving clause.

In her reply brief, the plaintiff contends that even if it is assumed that ERISA applies, the action should be remanded because state courts have concurrent jurisdiction over ERISA claims under 29 U.S.C. § 1132(e)(1).[3]

However the existence of concurrent jurisdiction does not necessitate remand. Section 1447, 28 U.S.C., does not require remand in such circumstances. *Thermtron, supra,* 423 U.S. 336, 96 S.Ct. 584; *see also Beckman v. Graves,* 360 F.2d 148 (10th Cir.1966) (removal permitted where state court had concurrent jurisdiction); *Aben v. Dallwig,* 665 F.Supp. 523, 525 (E.D.Mich. 1987) (concurrent jurisdiction, standing alone, is insufficient to defeat the right to removal under § 1441). Moreover, in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court ruled that claims for relief filed in state court and preempted by ERISA are removable to federal court under the well-pleaded complaint rule.

Because removal of the plaintiff's claims under Colo.Rev.Stat. § 10–3–1113(1)(a) and (c), and § 10–3–1104(1)(h) was proper, this action must remain in this court. Although state law controls the plaintiff's claim under Colo.Rev.Stat. § 10–8–116(2)(a)(V), this court has pendent jurisdiction over that claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, for the reasons stated above, IT IS ORDERED that the plaintiff's motion for remand is denied.

---

**3.** Section 1132(e)(1), 29 U.S.C., provides in relevant part that "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."