Anthony Jack PRESTI, Plaintiff,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, INC., et al., Defendants.

No. C–84–0797 EFL.

United States District Court, N.D. California.

March 22, 1985.

Douglas F. Young, Miller, Perrin, Domino, Giacalone & Ackerman, San Jose, Cal., for plaintiff.

James Fleming, Adams, Duque & Hazeltine, San Francisco, Cal., for defendants.

## ORDER RE APPLICABLE LAW AND SUMMARY JUDGMENT

LYNCH, District Judge.

This matter is before the Court on the plaintiff's motion to determine the law applicable to this action and on the defendant's motion for partial summary judgment.

### I. Factual Background

The foundation of this controversy is the decision by Connecticut General Life Insurance Company ("Connecticut General"), as administrator of the Martin Marietta employee benefit plan, to deny long-term disability benefits to the plaintiff, Anthony Presti ("Presti"). Presti began working as a sub-contracted employee of Martin Marietta at the San Jose FMC plant on March

30, 1981. As part of his benefits package, Presti received group long-term disability coverage through Connecticut General.

Prior to starting work with Martin Marietta, Presti consulted with several physicians concerning his minor fatigue and the pricking sensation in his legs. As early as January 1981, Presti consulted with Dr. Chun at the Sunnyvale Medical Clinic. Dr. Chun referred the plaintiff to Dr. Hoffman, a neurologist, who examined him on March 5, 1981. In addition to this examination, Dr. Hoffman conducted several tests to determine the cause of Presti's symptoms. Before starting work at Martin Marietta, the plaintiff underwent a nerve conduction velocity test and a lumbar spine puncture. On July 26, 1981, Dr. Hoffman diagnosed Presti's illness as multiple sclerosis.

By the end of 1981, Presti's fatigue prevented him from working an eight-hour day. Based on Dr. Hoffman's indication that Presti was 75% disabled, Martin Marietta reduced the plaintiff's work day to six hours. Presti continued to work this reduced schedule until January 30, 1982, when the FMC contract under which he was hired ended. As of this date, Martin Marietta put Presti on Salary Continuation due to his disability.

Anticipating the expiration of these benefits after six months, Presti applied to Connecticut General for long-term disability benefits on May 10, 1982. Martin Marietta forwarded Presti's claim to Connecticut General on June 3, 1982. As part of that application, Presti stated that he had become totally disabled on February 1, 1982.

On July 15, 1982, Connecticut General denied Presti's claim. The insurer concluded that the disability policy's exclusion for preexisting conditions applied to the plaintiff's claim. As stated under paragraph three of the Martin Marietta policy's limitations section, a claimant cannot receive benefits for a disability arising within the first twelve months of employment if the employee sought medical attention of any kind for that illness within three months prior to the policy effective date. Under this exclusion, Presti's pre-employment 1981 examinations would preclude him from recovering under the policy if he were totally disabled on February 1, 1982.

On September 2, 1982, Presti filed an ERISA appeal. In this appeal, Presti retracted his earlier disability date and indicated to the insurer that he was not "totally" disabled until April 12, 1982. This second disability date, more than twelve months past the policy's March 31, 1981 effective date, would allow Presti to avoid the preexisting conditions exclusion of the policy.

On January 10, 1983, Connecticut General denied Presti's appeal. In response, on December 28, 1983, the plaintiff filed in state court a civil action against Connecticut General for (1) breach of contract and breach of the covenant of good faith and fair dealing; (2) violation of California Insurance Code section 790.03; and, (3) tortious infliction of emotional distress. Connecticut General subsequently removed the action to federal court based on diversity jurisdiction.

## II. Motion to Determine Applicable Law

Before this Court is the plaintiff's motion to determine that California law, not federal ERISA law, governs this action. As both parties concede that the plaintiff's claim arose under an ERISA employee benefit plan and that Connecticut General is an ERISA fiduciary, the choice of law issues are controlled by ERISA's comprehensive preemption provisions.

■ As an insurance company making final claims decisions on a group employee benefits policy, Connecticut General is subject to ERISA. *McLaughlin v. Connecticut General Life Insurance Co.,* 565 F.Supp. 434, 441 (N.D.Cal.1983); *Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162, 1165 (C.D.Cal.1980).

That ERISA applies to this dispute, however, does not resolve the difficult question of ERISA's effect on Presti's state law

claims against Connecticut General.[1] "Federal regulation should not be deemed to preempt state regulatory powers unless the nature of the regulated subject matter permits no other conclusion or Congress has unmistakably so ordered." *Eversole*, 500 F.Supp. at 1166 (*citing Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

ERISA delineates its preemption provisions in four subsections of 29 U.S.C. section 1144. Subsection (a) provides that all state laws are superseded insofar as they "relate to" employee benefit plans. *Eversole*, 500 F.Supp. at 1167. This sweeping language is limited by subsection (b)(2)(A), ERISA's savings clause, which excludes from preemption state laws which regulate insurance. *Id.* The savings clause is, in turn, limited by subsection (b)(2)(B), the "deemer clause," which provides that self-insured pension plans shall not be deemed insurance companies subject to state law. *Id.* Finally, subsection (d) prevents ERISA from impairing or superseding any other federal law, for example, the McCarran-Ferguson Act. *Id.*

Both parties concede that the plaintiff's state law claims "relate to" the Martin Marietta employee benefit plan. Thus, unless expressly excluded under the savings clause, Presti's claims would be preempted by ERISA. The controversy, therefore, centers on the scope of the ERISA savings clause and whether, as the plaintiff argues, it reaches far enough to preserve his state claims against Connecticut General.

The plaintiff urges the Court to construe ERISA's savings clause broadly. Citing *Eversole* and *McLaughlin*, Presti asserts that the savings clause preserves that statutory and case law that directly regulate pension plan insurers, even when these regulations indirectly affect the operation of ERISA plans by insurer-fiduciaries.

Conversely, the defendant argues that indirect insurance regulations have the same effect as direct state regulation of ERISA benefit plans prohibited by the statute's preemption provisions. *See Alessi v. Raybestos Manhattan*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Citing Congressional intent to ensure plan uniformity, the defendant contends that the only indirect regulation of ERISA insurers that can survive is that which does not "relate to" pension plans. For example, liquidity and underwriting requirements by state insurance commissions to insure financial soundness of pension plan insurers would be allowed under the savings clause, but state laws controlling contract interpretation and insurer obligations to policyholders would not.

In determining the scope of ERISA's savings clause, the Court is faced with the difficult task of balancing two competing legislative purposes. On one side is the articulated intention of the Congress to establish a uniform regulatory mechanism for employee benefit and pension plans. *See* Report of the Congressional Pension Task Force for the House Subcommittee on Labor Standards, Committee on Education & Labor, U.S. House of Representatives, 94th Congress, 2d Sess. (January 3, 1977) at 8. On the other is the longstanding primacy of state insurance regulation, as evidenced by the McCarran-Ferguson Act, 15 U.S.C. sections 1011–1015. ("No act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.")

While neither the United States Supreme Court or the Ninth Circuit has reviewed the scope of ERISA's savings clause, both have soundly rejected direct state regulation of pension plans. *See Alessi v. Raybestos-Manhattan*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); *Hewlett-Packard v.*

---

**1.** It is fair to say that the scope and impact of ERISA on state law is highly unsettled. *See, e.g., Russell v. Massachusetts Life Insurance Co.*, 722 F.2d 482 (9th Cir.1983), *cert. granted*, ── U.S. ──, 105 S.Ct. 81, 83 L.Ed.2d 29 (1984);

*Attorney General v. Travelers Insurance Co.*, 391 Mass. 730, 463 N.E.2d 548, *prob. juris. noted, Metropolitan Life Insurance v. Massachusetts*, ── U.S. ──, 105 S.Ct. 320, 83 L.Ed.2d 258 (1984).

*Barnes,* 571 F.2d 502 (9th Cir.1978), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). Whether or not these courts will view indirect regulation of ERISA plans by way of state insurance laws with equal hostility is uncertain. *See Attorney General v. Travelers Insurance Co.,* 391 Mass. 730, 463 N.E.2d 548, *prob. juris. noted, Metropolitan Life Insurance v. Massachusetts,* —— U.S. ——, 105 S.Ct. 320, 83 L.Ed.2d 258 (1984).

Unlike *Alessi* and the cases that followed, Presti's claims do not invite state interference with the content of ERISA plans. The plaintiff here is not relying on insurance regulations that impose benefit requirements on Connecticut General's policy.[2] Such direct, content-based requirements are clearly antithetical to ERISA's stated purpose of plan uniformity. Instead, Presti's claims rely on state insurance regulations and decisional law that govern the relationship between an insurer and its policyholder. Such fiduciary relations have traditionally been the exclusive preserve of state insurance laws. *See SEC v. National Securities, Inc.,* 393 U.S. 453, 459–60, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969) (defining McCarran-Ferguson's preservation of state laws regulating the "business of insurance" as those statutes aimed at protecting this fiduciary relationship.)

Two district courts within this Circuit have held that this important and recognized tradition of federal deference to state insurance regulation survives under ERISA's savings clause. In *Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162 (C.D.Cal.1980), Judge Pfaelzer held that a plaintiff could sue under California law the insurer-fiduciary of her employee benefit plan for its bad faith denial of a claim for medical benefits. As excepted under ERISA's savings clause, the plaintiff's claims for: 1) breach of the duty of

good faith and fair dealing; 2) common law fraud; 3) breach of California Insurance Code section 790.03 (unfair insurance practices); and 4) breach of fiduciary duty were not preempted.

In determining the scope of the savings clause, the court in *Eversole* interpreted ERISA's exclusion of laws "that regulate insurance" by looking at the "laws regulating the business of insurance" language of McCarran-Ferguson. *Eversole,* 500 F.Supp. at 1168 (The two statutes are *in pari materia* and should, therefore, be construed consistently.) As defined in *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), laws "regulating the business of insurance" are those state statutes and laws of general application aimed at protecting or regulating the relationship between the insurance company and the policyholder. *Id.* Thus, these state laws, although indirect restraints on employee benefit plans, are not preempted.

The Northern District adopted the rule of *Eversole* in *McLaughlin v. Connecticut General Life Insurance Co.,* 565 F.Supp. 434, 439 (N.D.Cal.1983). In that case, an insured brought an action against the employee benefit insurer after it denied the plaintiff's claim for medical expenses incurred for experimental cancer therapy. Judge Patel, accepting both the reasoning and ruling of *Eversole,* held that California's rules of insurance contract construction and the implied covenant of good faith and fair dealing were not preempted under ERISA since they were state laws which "regulate insurance." *McLaughlin,* 565 F.Supp. at 443.

■ This Court accepts the rationales and holdings of these cases and thereby concludes that Presti's state law claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of

---

2. The defendant validly asserts that the line between content regulation and fiduciary requirements is not a clear one, particularly when contract terms are inserted by courts under the guise of construction. While this may create a conflict in some future case, it is not now before this Court. The contract exclusion upon which

Connecticut General relies to exclude Presti is unambiguous and not subject to judicial contraction or expansion. Instead, the breach of contract claim will succeed or fail based upon the date that Presti became totally disabled, not upon a rule of contract interpretation.

Insurance Code section 790.03 and tortious infliction of emotional distress are within the scope of the savings clause. The Court cannot believe that the consumer protections afforded California policyholders were meant to be withdrawn from those persons whose coverage was provided under an employee benefit plan. The interest in ERISA plan uniformity cannot be secured at the expense of the uniform state regulation of those insurers chosing to write policies in California. As noted in *Eversole,* to the extent that dual obligations may be encountered by insurance companies when they assume the responsibilities of an ERISA fiduciary, this result is necessary to "harmonize the divergent goals of ERISA's preemption provisions: to establish regulation of employee benefit plans while simultaneously maintaining the ascendancy of state regulation of insurance matters." *Eversole,* 500 F.Supp. at 1170.

While further clarification in this area is undoubtedly needed, the current law in this District accords with this Court's position. As there is nothing in the ERISA "savings clause" to limit it further, this Court holds that the plaintiff's actions under California's laws regulating insurance are not preempted. The plaintiff's motion, therefore, is *granted.*

### III. Motion for Summary Judgment

Also before the Court is the defendant's motion for partial summary judgment on the tort, insurance code and punitive damages aspects of Presti's claims. Specifically, Connecticut General contends that its treatment of Presti and its claims activities have been fair and in good faith. Thus, as a matter of law, its conduct cannot constitute either a tortious breach of the covenant of good faith or a violation of the California Insurance Code. Nor can it have acted oppressively or maliciously, as required for punitive damages.

 California has developed a vast body of statutory and common law regulating the obligations of an insurance company to its policyholders. Under California's Insurance Code section 790.03 an insured can sue his insurer for deceptive insurance claims practices. *See Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979). In addition, the implied covenant of good faith and fair dealing protects an insured against the tortious refusal of an insurer to pay benefits due under the policy. *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 575, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). As is available for all actions in tort, where the defendant's conduct is oppressive or outrageous, a plaintiff can recover punitive as well as consequential damages. *Silberg v. California Life Insurance Co.,* 11 Cal.3d 452, 462, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974).

 The requisite element for these actions is an insurer's *unreasonable* denial of policy benefits. When a genuine controversy concerning legal liability exists, the Court may rule, as a matter of law, that the insurer's denial of the claim was not unreasonable. *Safeco Insurance Co. v. Guyton,* 692 F.2d 551, 557 (9th Cir.1982).

The defendant contends that it denied Presti's claim based on a genuine question of its liability under the policy. In addition, Connecticut General notes that it has taken affirmative efforts to secure extra-contractual benefits for Presti as evidence of their reasonable and fair approach toward the plaintiff. Connecticut General, therefore, cannot be held liable for bad faith damages in tort or under section 790.03. Nor can it be liable for punitive damages.

The claims dispute in this case centers on the date Presti became totally disabled. Two different dates have been submitted to Connecticut General. On his first claim application, Presti indicated that he was totally disabled as of February 1, 1982. This remained the operative disability date until September 2, 1982, when Presti amended his claim to show April 12, 1982 as the date he became totally disabled.

 Under the first date, a reasonable reading of the policy's preexisting condition exclusion would appear to bar Presti from recovery. At a minimum, a genuine dis-

pute about Connecticut General's liability exists sufficient to find, as a matter of law, that the insurer did not breach its statutory or common law duties to Presti. Therefore, the Court holds that until September 2, 1982, the actions of Connecticut General cannot be determined unreasonable. Nor can they be viewed as malicious or oppressive.

 After September 2, 1982, however, the company faced a different disability date. Under an April 12 disability date, Presti would no longer be excluded under the preexisting conditions clause. Connecticut General argues that Presti is still not covered since its disability coverage requires that a claimant be in active service with Martin Marietta when the disability begins.

Presti, however, contends that his coverage did not terminate when he stopped working in February. Instead, he relies on paragraph one of the certificate's "Termination of Insurance" section that extends coverage to employees whose active service terminates because of their disabling illness. For these individuals, the insurance continues during the period for which monthly income is payable.

On these facts, the Court is unwilling to hold, as a matter of law, that Connecticut General is entitled to summary judgment after September 2, 1982. It is not clear or uncontroverted that Connecticut General's denial of Presti's ERISA appeal was reasonable or made in good faith. Nor can the Court hold on these facts that no malicious or oppressive conduct occurred.

Accordingly, the defendant is entitled to summary judgment on its conduct until September 2, 1982. The Court finds, as a matter of law, that Connecticut General acted reasonably in relying on the disability date provided by Presti and that there exists a reasonable dispute surrounding Presti's coverage given the policy's preexisting condition exclusion. Until September 2, the defendant cannot be held liable for: violations of Insurance Code section 790.03; breach of the covenant of good faith and fair dealing; or punitive damages. As to

this first period, therefore, only the breach of contract cause of action remains.

For those actions of the defendant after September 2, 1982, the Court denies defendant's motion for summary judgment. As there exists a genuine and material issue of fact as to whether Connecticut General wrongfully and unreasonably denied Presti's claim, summary judgment cannot be granted. As to this second period, therefore, the remaining causes of action are: breach of contract; breach of covenant of good faith; violation of the California Insurance Code section 790.03; and punitive damages.

IT IS SO ORDERED.