Douglas **GRAVES**, Plaintiff,

v.

**BLUE CROSS OF CALIFORNIA**, Defendant.

No. C–87–4815 EFL.

United States District Court, N.D. California.

May 25, 1988.

Jeremiah J. Leahy, Foster City, Cal., for plaintiff.

Daniel A. Chesir, Blue of Cross of California, Oakland, Cal., for defendant.

## MEMORANDUM DECISION

LYNCH, District Judge.

This case is before the Court on plaintiff Graves' motion to remand. The sole issue raised by this motion is whether the federal Employee Retirement Income Security Act of 1974 ("ERISA") preempts claims brought pursuant to section 790.03(h) of the California Insurance Code. For reasons explained below, this Court concludes that ERISA does not preempt such claims and therefore grants the motion to remand.

## BACKGROUND

In early 1986, Graves was diagnosed as suffering from Lymphoma and Acquired Immune Deficiency Syndrome. At the time, he was covered by an ERISA-regulated group health insurance plan sponsored by his employer. Defendant Blue Cross of California ("Blue Cross") was the insurer under the plan.

Pursuant to the terms of the policy, Graves applied for disability benefits. According to Graves' complaint, Blue Cross grossly mishandled his claims. Graves alleges that this mishandling, which resulted in delay and confusion, caused him "extreme anxiety and upset."

In July 1987, Graves filed suit against Blue Cross, asserting a single cause of action. He alleged that Blue Cross' claims handling procedures constituted violations of California Insurance Code section 790.-03(h),[1] which, in conjunction with section 790.02, prohibits certain insurance claims settlement practices as "unfair and deceptive acts or practices in the business of insurance."[2]

■ Blue Cross removed the case to federal district court on the ground that ERISA preempts Graves' claim, thus creating federal question jurisdiction.[3] Graves maintains that preemption does not apply here, and that this Court is therefore without subject matter jurisdiction.

---

1. Unless otherwise specified, all references to sections are to the California Insurance Code.

2. In *Royal Globe Ins. Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979), the California Supreme Court interpreted section 790.03(h) to allow a private right of action against insurers.

3. Blue Cross correctly notes that when ERISA preempts a state claim, the action asserting such a claim may be removed to federal court even though the complaint makes no reference to ERISA or federal law. *See Metropolitan Life Ins. Co. v. Taylor,* — U.S. —, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Thus there can be no dispute that the case is properly in federal court if ERISA preempts section 790.03(h).

## DISCUSSION

ERISA's preemption clause provides that ERISA "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan" regulated under ERISA. 29 U.S.C. § 1144(a). In the context of insurance regulation, two other clauses are relevant. First, the "saving clause" excepts from preemption "any law of any State which regulates insurance...." *Id.* § 1144(b)(2)(A). Second, the "deemer clause" states that employee benefit plans and trusts shall not "be deemed to be ... engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts...." *Id.* § 1144(b)(2)(B). In short, ERISA preempts state laws relating to employee benefit plans unless such laws regulate insurance, but no state law can avoid preemption by deeming an employee benefit plan to be engaged in the business of insurance.

■ The parties do not dispute that the California law at issue here "relates to" ERISA-regulated employee benefit plans within the meaning of the preemption clause.[4] Nor do the parties argue about the applicability of the deemer clause in this situation. Rather, the focus is entirely on whether the saving clause precludes preemption. Accordingly, this Court must decide whether section 790.03(h) escapes preemption as a law "regulating insurance."

In *Presti v. Connecticut Gen. Life Ins. Co.*, 605 F.Supp. 163 (N.D.Cal.1985), this Court faced the same issue and held that ERISA does not preempt section 790.03(h). Since *Presti*, the Supreme Court has decided two major ERISA preemption cases bearing on this question. In *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Court found that a state law mandating certain coverage in health insurance policies was not preempted because it was an insurance regulation. In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Court held that a cause of action arising from alleged mishandling of insurance claims and based on state common law was not saved from preemption as insurance regulation. The question presented, therefore, is whether *Pilot Life*, read together with *Metropolitan Life*, requires this Court to retreat from its holding in *Presti*.

Blue Cross contends that the teaching of *Pilot Life* is that laws permitting a private right of action based on insurance claims settlement practices are not saved from preemption as insurance regulations. Graves responds that *Pilot Life* does not control here because it held merely that the Mississippi common law of bad faith was preempted, and did not address statutory regulation of insurance claims practices.

In *Pilot Life*, the Supreme Court followed the two-step approach it had previously taken in *Metropolitan Life* to determine if a state law was an insurance regulation. First, the Court "took what guidance was available from a 'common-sense view' of the language of the saving clause itself." *Pilot Life*, 107 S.Ct. at 1553. Second, the Court applied the three criteria developed under case law interpreting the phrase "business of insurance" in the McCarran–Ferguson Act. *Id.* Those criteria are (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities

---

**4.** Under the Supreme Court's recent decision in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), this conclusion seems inescapable. The Court there found that common law causes of action based on improper claims handling "related to" employee benefit plans. Notably, however, this determination is somewhat at odds with a dictum in the Court's earlier decision in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In *Metropolitan Life*, the Court stated that *"laws that regulate only the insurer,* or the way in which it may sell insurance, do not 'relate to' benefit plans in the first instance." *Id.* at 741, 105 S.Ct. at 2390 (emphasis added). Although laws governing claims processing would appear to be laws "regulating only the insurer," the Court in *Pilot Life* evidently abandoned this test for determining whether the preemption clause is triggered.

within the insurance industry. *Id.* at 1553–54 (citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)).

Under the common-sense portion of the test, the Court determined that the word "regulates" means that "a law must not just have an impact on the insurance industry, but be specifically directed toward that industry." *Id.* 107 S.Ct. at 1554. Since the roots of Mississippi's law of bad faith were "firmly planted in the general principles of Mississippi tort and contract law," a common-sense view suggested that the law was not insurance regulation. *Id.*

The Court then found that application of the McCarran–Ferguson Act criteria pointed to the same result. The Court offered little discussion of its determination that the state law did not meet the first and third criteria, except to reiterate that the law was not unique to the insurance industry. Regarding the second criterion, the Court noted that the Mississippi law "may be said to concern 'the policy relationship between the insurer and the insured.'" *Id.* at 1555. However, the connection to that relationship "is attenuated at best," because the law "does not define the terms of the relationship between the insurer and the insured." *Id.* In summary, the Court concluded that "the Mississippi common law of bad faith at most meets one of the three criteria used ... in *Metropolitan Life* to identify laws that 'regulat[e] insurance' under the saving clause." *Id.*

The Court's analysis did not stop there, however. It proceeded to note that interpretation of the saving clause also depended on "the role of the saving clause in ERISA as a whole." *Id.* "Because in this case, the state cause of action seeks remedies for the improper processing of a claim for benefits under an ERISA-regulated plan, our understanding of the saving clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA, § 502(a), 29 U.S.C. § 1132(a)." *Id.* After examining the various civil remedy provisions, the Court observed that they "set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Id.* at 1556. As such, the civil remedy framework was intended to be exclusive. Based on this exclusivity principle, along with the fact that common sense and the McCarran–Ferguson Act factors militated against a finding of insurance regulation, the Court held that the Mississippi law did not avoid preemption under the saving clause. *Id.* at 1558.

*Pilot Life* thus provides the analytical framework for determining whether ERISA preempts section 790.03(h). Before embarking on that analysis, however, this Court notes that since the decision in *Pilot Life*, at least three other courts have published opinions addressing this issue, and each one has reached a different conclusion. *See Lee v. Prudential Insurance Co.*, 673 F.Supp. 998 (N.D.Cal.1987) (private civil remedy under section 790.03(h) preempted); *Roberson v. Equitable Life Assurance Society*, 661 F.Supp. 416 (C.D.Cal.1987) (section 790.03(h) preempted entirely); *Goodrich v. General Telephone Co.*, 195 Cal.App.3d 675, 241 Cal.Rptr. 640 (1987) (section 790.03(h) claim not preempted because saving clause applies).[5] The

---

5. In addition, several Ninth Circuit cases have involved this issue, although all of them were decided prior to the Supreme Court's decision in *Pilot Life*. In *Russell v. Massachusetts Mutual Life Ins. Co.*, 722 F.2d 482 (9th Cir.1983), *rev'd on other grounds*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), *vacated*, 778 F.2d 542 (9th Cir.1985), the plaintiff asserted several causes of action based on improper claims handling, including one pursuant to section 790.03(h). The court determined that the state laws at issue "related to" an employee benefit plan within the meaning of the preemption clause, and on that basis held that the state causes of action were preempted. *Id.* at 487–88. In a footnote, the court acknowledged the existence of the saving clause, but ignored its potential applicability in that case.

*Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815 (9th Cir.1985), also involved improper claims handling allegations. Without citing *Russell*, the *Takeda* court noted the ERISA preemption issue, including the potential applicability of the saving clause, but declined to resolve the matter. *Id.* at 822 n. 10.

Court will address these cases more fully below.

### A. Insurance Regulation Analysis

#### 1. Common–Sense View

Applying the approach developed in *Metropolitan Life*, this Court must begin by taking a "common-sense view" of whether the California law is an insurance regulation. All three courts to consider this question have found that section 790.03(h) is "specifically directed toward the insurance industry." *See Lee*, 673 F.Supp. at 1000 ("Section 790.03(h) qualifies because it prohibits unfair claims settlement practices."); *Roberson*, 661 F.Supp. at 422 ("it would strain logic to argue that section 790.03(h) is not specifically directed toward the insurance industry"); *Goodrich*, 195 Cal.App.3d at 684, 241 Cal.Rptr. 640 ("common sense would be severely strained" by conclusion that section 790.03(h) is not a law regulating insurance). This Court agrees.

The California legislature explicitly stated that the purpose of the Unfair Practices Act, of which section 790.03(h) is a part, is "to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the [McCarran–Ferguson Act]...." Cal.Ins.Code § 790. Thus the law is not only aimed at the insurance industry but is specifically intended to be insurance regulation within the meaning of the McCarran–Ferguson Act, the very law this Court must look to in deciding if the statute comes under the protection of the saving clause. In view of this clearly stated legislative purpose, the Court concurs with the *Goodrich* court's view that common sense not only supports a conclusion that section 790.03(h) regulates insurance, but would have to be disregarded to reach the opposite result. *See Goodrich*, 195 Cal.App.3d at 684, 241 Cal. Rptr. 640.

#### 2. The McCarran–Ferguson Act Criteria

##### a. Risk Transference

Under the first McCarran–Ferguson Act criterion, the state law does not appear to have "the effect of transferring or spreading a policyholder's risk," as that concept has been applied in the cases. While an argument exists that claims settlement practices affect the transfer of risk,[6] the Supreme Court appears to have limited the principle to laws regulating the content of the contract between insured and insurer, i.e., coverage matters:

> The transfer of risk from insured to insurer is effected by means of the con-

---

The Ninth Circuit appeared to resurrect the vacated *Russell* holding in *Clorox Co. v. U.S. District Court*, 779 F.2d 517 (9th Cir.1985). The plaintiff in *Clorox* sued her employer for, among other things, what the court described as "misrepresentation of intent to pay disability benefits" and "negligent administration of [the] employee benefit plan." *Id.* at 519. The opinion does not disclose whether the plaintiff brought a claim under section 790.03(h). The *Clorox* court ruled that removal in that case was proper, citing *Russell* for the proposition that "[w]e have held that ERISA preempts state claims involving improper handling of claims for employee benefits." *Id.* at 521. Again the court ignored the effect of the saving clause.

*Clorox*, however, did not settle the matter. In *Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249 (9th Cir.1987), the court cited *Takeda* in support of its assertion that "it remains an open question in this circuit whether an ERISA beneficiary seeking to recover on an insurance policy in state court can rest on state law claims and thereby avoid removal." *Id.* at 1255 n. 5. Significantly, the *Digregorio* court cited *Clorox* earlier in the same footnote for the proposition that Congress did not preclude removal in cases brought under ERISA's civil remedy scheme. Therefore it seems quite unlikely that *Digregorio* overlooked *Clorox*'s ruling on the preemption issue.

This Court need not speculate on whether *Clorox* and *Digregorio* are reconcilable. It is enough to note that the Ninth Circuit decisions in this area all predated *Pilot Life*, and that none of them addressed the precise issue before this Court: the applicability of the saving clause to section 790.03(h). Accordingly, these cases are neither controlling nor instructive in the case at bar.

6. The concept of risk transference presupposes that valid claims will be paid promptly and in full. To the extent this is not true, no risk transference has, in fact, occurred. From this perspective, laws directed at ensuring the prompt, full payment of valid claims are seeking to guarantee that the basic premise underlying risk transference is correct. Such laws are thus arguably fundamental to effecting a transfer of risk.

tract between the parties—the insurance policy—and that transfer is complete at the time that the contract is entered.... Petitioner's argument contains the unspoken premise that the transfer of risk from an insured to his insurer actually takes place not when the contract between those parties is completed, but rather only when the insured's claim is settled. This premise is contrary to the fundamental principle of insurance that the insurance policy defines the scope of risk assumed by the insurer from the insured.

*Pireno*, 458 U.S. at 130–31, 102 S.Ct. at 3009–10 (1982) (citations omitted). This passage suggests that, in the Supreme Court's view, claims settlement practices do not have the effect of transferring or spreading risk. Accordingly, the first McCarran–Ferguson Act criterion cuts against a ruling that section 790.03(h) regulates insurance. *Accord Lee*, 673 F.Supp. at 1001 ("How the insurer processes claims in compliance with section 790.03(h) has little or no influence on the insurer's determination of which potential customers are reasonable risks to insure."); *Roberson*, 661 F.Supp. at 422 ("[S]ection 790.03(h) does not purport to regulate the substantive terms or content of insurance policies."); *Goodrich*, 195 Cal.App.3d at 684, 241 Cal.Rptr. 640 ("It is true section 790.03 does not affect policyholder risk.").

b. *Integral Part of Policy Relationship*

With respect to the second criterion, this Court has no hesitation in concluding that section 790.03(h) governs an "integral part of the policy relationship between the insurer and the insured." In one of the seminal cases interpreting the "business of insurance" language of the McCarran–Ferguson Act, the Supreme Court explained the principle as follows:

The relationship between insurer and insured, the type of policy which could be issued, *its reliability*, interpretation, *and enforcement*—these were the core of the "business of insurance."... [W]hatever the exact scope of the statu-

tory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. *Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance."*

*SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969) (emphasis added).

By controlling claims settlement practices, section 790.03(h) regulates the insurance contract's reliability and enforcement, matters at "the core" of the "business of insurance." Indeed, nothing could be more fundamental to the interaction between policyholder and insurer than whether claims are paid promptly and in full. As Justice Rehnquist observed in *Pireno*:

Central to [the] contractual relationship [between insurer and insured] is the process of claims adjustment—the determination of the actual payments to be made to the insured for losses covered by the insurance contract. The key representation of the insurance company and the principal expectation of the policyholder is that prompt payment will be made when the event insured against actually occurs. As one commentator has stated:

"Up until the time there is a claim and a payment is made, the only tangible evidence of insurance is a piece of paper. In other words, the real product of insurance is the claims proceeds. Selection of the prospect, qualifying him for coverage that suits his needs, delivery of a policy, collecting premiums for perhaps years, making changes in coverage to meet changing situations, all of these are but preambles to the one purpose for which the insurance was secured, namely to collect dollars if and when an unforeseen event takes place." J. Wickman, Evaluating the Health Insurance Risk 57 (1965).

*Pireno*, 458 U.S. at 136–37, 102 S.Ct. at 3012–13 (Rehnquist, J., dissenting).[7]

---

**7.** While Justice Rehnquist made these observa-  tions in dissent, Chief Justice Burger and Justice

Of the three cases to consider the applicability of the saving clause to section 790.-03(h), only *Roberson* concluded that the statute is not integral to the insurer-insured relationship. 661 F.Supp. at 422; *cf. Lee*, 673 F.Supp. at 1001 (section 790.03(h) is "specifically directed to the enforcement of the insurance policy"); *Goodrich*, 195 Cal.App.3d at 684, 241 Cal.Rptr. 640 (section 790.03(h) "defines the terms of the relationship between the insurer and the insured"). The *Roberson* court reached this conclusion because the statute "does not regulate the terms of the [insurance] contract itself." 661 F.Supp. at 422 (citing *Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419, 423 (4th Cir. 1985)). While it is true, as noted above, that the Supreme Court in *Pireno* recognized a distinction between the terms of the policy and the payment of a claim,[8] this distinction was used only for purposes of illustrating the concept of risk transference. It was not employed, nor should it

be, to determine whether a practice is integral to the insurer-insured relationship. *See Pireno*, 458 U.S. at 130–31, 102 S.Ct. at 130–31, 102 S.Ct. at 3009–10.[9]

#### c. *Limited to Insurance Industry*

Finally, the discussion above demonstrates that the third McCarran–Ferguson Act criterion is met. Obviously, the practices regulated by section 790.03(h) are "limited to entities within the insurance industry." By its terms, the California statute pertains only to insurance practices. Cal.Ins.Code § 790.03. Not surprisingly, therefore, the cases are again in agreement on this point. *See Lee*, 673 F.Supp. at 1001; *Roberson*, 661 F.Supp. at 422.; *Goodrich*, 195 Cal.App.3d at 684, 241 Cal.Rptr. 640.

In summary, application of the *Pilot Life* analysis to this case leads to the conclusion that the California statute is an insurance regulation within the meaning of the sav-

---

O'Connor joined him, and the majority opinion is not inconsistent with these remarks as they apply in this case. The majority found that the "peer review" system of determining whether a claim is covered under a health insurance policy was not "the business of insurance." This procedure was entirely internal to the insurer; the majority emphasized that it did not involve interaction between the insurer and the insured. 458 U.S. at 132, 102 S.Ct. at 3010 ("[T]hese decisions are entirely [the insurer's,] ... the policyholder['s] only concern is *whether* his claim is paid, not *why* it is paid.") By contrast, the practices governed in section 790.03(h), with one possible exception, *see* Cal.Ins.Code § 790.03(h)(3), directly relate to the interaction between the insured and the insurer.

8. The *Lee* court commented that "this distinction is not found in cases construing [the McCarran–Ferguson Act]." 673 F.Supp. at 1001 n. 4. As noted, this Court cannot agree, but does not dispute the *Lee* court's view that "[t]he proper focus is on the relationship, not on whether a regulation is arguably procedural or substantive." *Id.*

9. Moreover, this Court is uncertain whether the *Roberson* court's reliance on the Fourth Circuit's decision in *Powell* is well taken. *Powell* emphasized that the defendant insurer there, unlike the defendants here and in *Roberson*, provided no insurance to the plan, only claims processing services. In a somewhat ambiguous footnote, the court arguably implied that the result might be different "in another context." 780 F.2d at 424 n. 7.

In any event, the *Powell* court's reasoning is suspect. The court had already determined that the unfair practices claim against the employer was not saved because, under the deemer clause, the employer "cannot be deemed to be an insurer or otherwise engaged in the business of insurance by virtue of its sponsorship of the Plan," thus precluding operation of the saving clause. *Id.* at 423. It did not apply the deemer clause to the insurance company because it "is not an 'employee benefit plan.'" *Id.*

The trouble with this reasoning is that it is internally inconsistent. The court was correct that the language of the deemer clause provides only that "employee benefit plans and trusts" shall not be deemed to be engaged in the business of insurance. But the literal reading that the *Powell* court gave to that provision with regard to the insurance company should apply with equal force to the employer. Just as the insurance company is not an "employee benefit plan," neither is the employer. Either both defendants or neither of them should fall within the deemer clause.

In *Pilot Life*, the Court acknowledged, but declined to reach, an argument by the insurance company that the deemer clause applied because the insurance company, insofar as it was processing benefit claims, was acting as a plan trustee. 107 S.Ct. at 1558 n. 4. Obviously, such an argument would carry greater weight when, as in *Powell*, there is no insurance policy involved. Since Blue Cross does not raise this argument here, this Court will not address it.

ing clause. Unlike the Mississippi law in *Pilot Life*, section 790.03(h) satisfies the "common-sense view" portion of the test, and meets two of the three McCarran–Ferguson Act criteria. The different result in this case flows naturally from the different origin and scope of the two laws: while Mississippi's common law of bad faith was rooted in general contract and tort law, and applied outside the insurance context (points repeatedly emphasized by the Supreme Court), section 790.03(h) was specifically intended by the California legislature to regulate the insurance industry and applies only in that setting. Although section 790.03(h) probably does not meet the first McCarran–Ferguson Act criterion, "none of these criteria is necessarily determinative in itself." *Pireno*, 458 U.S. at 129, 102 S.Ct. at 3009. Therefore this Court agrees with the conclusion reached in *Goodrich:* "[s]ection 790.03(h) fits the other two criteria mentioned in *Pilot Life* so well we have no difficulty concluding it is a law relating to the business of insurance within the meaning of the McCarran–Ferguson Act...." 195 Cal.App.3d at 684, 241 Cal. Rptr. 640.

## B. *Exclusivity Analysis*

Depending on how one reads *Pilot Life*, a finding that section 790.03(h) regulates insurance may not necessarily save it from preemption. In addition to concluding that the Mississippi bad faith law failed the "common-sense view" test and met, at most, only one of the McCarran–Ferguson Act criteria, the *Pilot Life* Court appeared to rely on the exclusive nature of ERISA's civil enforcement provisions to support its holding that the law was not saved from preemption. 107 S.Ct. at 1555–58. From this, the *Roberson* court determined that "even assuming that section 790.03(h) regulates insurance and is therefore within the scope of the saving clause, it must be preempted for infringing on the same exclusive remedy provisions that were dispositive in *Pilot Life*." 661 F.Supp. at 424 (footnote omitted). Similarly, the court in *Lee* ruled that "even though section 790.-03(h) regulates insurance under the *Metropolitan Life* criteria, the *Pilot Life* exclu-

sivity analysis mandates that ERISA's civil enforcement scheme displace Kwan Lee's claim under section 790.03(h)." 673 F.Supp. at 1002. This Court cannot agree with the reading given to *Pilot Life* in *Roberson* and *Lee*.

It is true that the *Pilot Life* Court employed strong language in describing the preclusive effect of ERISA's civil enforcement scheme. "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." 107 S.Ct. at 1556. Indeed, at one point in the opinion the Court stated flatly that Congress intended "that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by [ERISA's civil enforcement provisions]." *Id.* at 1557. Such sweeping and unqualified statements could reasonably lead to the conclusion reached in *Lee* and *Roberson:* that the *Pilot Life* Court intended to preempt even insurance regulation if it permits private civil recovery in circumstances not authorized under ERISA.

However, such a holding would conflict with both the language of ERISA itself and the Supreme Court's pronouncements in *Metropolitan Life*. As the *Goodrich* court noted, the language of the saving clause is clear: except for the deemer clause, "*nothing* in this subchapter shall be construed to exempt or relieve any person from *any* law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A) (emphasis added); *see Goodrich* 195 Cal. App.3d at 685, 241 Cal.Rptr. 640. Since ERISA's civil enforcement provisions are contained in the same subchapter as the saving clause, *see* 29 U.S.C. § 1132, the plain language of the statute precludes a ruling that state laws falling within the boundaries of the saving clause are nevertheless preempted if they interfere with the policies underlying the exclusive civil enforcement scheme. In effect, such a hold-

ing would rewrite the saving clause to read: "nothing in this subchapter *except section 1132* shall be construed to exempt or relieve any person from any law of any State which regulates insurance...."

The Supreme Court strongly indicated in *Metropolitan Life* that this is not the law. "If a state law 'regulates insurance,' as mandated-benefits laws do, it is not preempted. *Nothing in the language, structure, or legislative history of the Act supports a more narrow reading of the [saving] clause...."* 471 U.S. at 746, 105 S.Ct. at 2393 (emphasis added). Notably, the *Pilot Life* Court did not back away from this language, but distinguished *Metropolitan Life* because it did not involve the precise issue before the Court in *Pilot Life*. "Our resolution of this different question does not conflict with the Court's earlier general observations in *Metropolitan Life*." 107 S.Ct. at 1558.

In this Court's view, the only way to square *Pilot Life* with *Metropolitan Life* and the plain language of ERISA is to read the *Pilot Life* exclusivity analysis as merely bolstering the Court's apparent conclusion that the Mississippi bad faith law was not insurance regulation within the meaning of the saving clause. In other words, the insurance regulation and exclusive remedy discussion in *Pilot Life* are not independent, alternative holdings, but interdependent considerations supporting the Court's conclusion that the saving clause does not apply.[10] Consequently, this Court declines to read *Pilot Life* to stand for the proposition that a state insurance regulation otherwise protected from preemption is nevertheless displaced simply because it provides a cause of action or remedy not otherwise available under ERISA.

CONCLUSION

In cases where the state law in question is insurance regulation within the meaning of the saving clause, *Metropolitan Life* is still the law. Analysis need proceed no further: the state law is not preempted. Admittedly, this is an exception to the principle of uniformity reflected in ERISA's civil enforcement provisions. But it is an exception that Congress unmistakably mandated in the clear language of the saving clause. Accordingly, ERISA does not preempt Graves' claim under section 790.03(h), and this Court lacks subject matter jurisdiction over the case. The motion to remand the case to state court is therefore granted.

IT IS SO ORDERED.

---

**10.** The language of the actual holding in *Pilot Life* supports this view:

"Considering the common-sense understanding of the saving clause, the McCarran–Ferguson Act factors defining the business of insurance, and, most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive, we conclude that Dedeaux's state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved by [the saving clause], and therefore is preempted...."

107 S.Ct. at 1558 (footnote omitted). Thus the Supreme Court did not purport to make its two lines of reasoning alternative holdings, but listed them both as necessary grounds for its interpretation of the saving clause. Indeed, if the exclusivity analysis were sufficient to displace the state law even if that law qualified as insurance regulation, the bulk of the opinion would be superfluous: there would have been no need to engage in the "business of insurance" analysis at all.